## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KRISTEN FREEL, as Personal Representative
of the Estate of JAMES E. FREEL, Deceased,

        Plaintiff,                  Case No.: 24 -

v.                                  Hon.

COUNTY OF MONROE, CO CHARLES GALLOWAY,
CO JAMES MCGARRY, CO JUSTIN COSTLOW,
CO NOAH KETTINGER, CO JUSTUS SCHAFFER,
SGT. JASON WATTERSON, CO JASON BLOMGREN,
CO DAVID GURGANUS, CO BRIAN ROBAR,
ADVANCED CORRECTIONAL HEALTHCARE, INC.,
DR. DARYL PARKER, ALYSIA TOLA, LPN,
RACHEAL MICHAUD, LPN, and ALEXISS CONTE, LPN,

      jointly and severally.

           Defendants.

GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
*Fieger, Fieger, Kenney & Harrington, P.C.*
Attorneys for Plaintiff
19390 W. Ten Mile Rd.
Southfield, MI 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

## COMPLAINT, AFFIDAVITS OF MERIT, AND DEMAND FOR JURY TRIAL

Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of

JAMES E. FREEL, Deceased, by and through her attorneys, *FIEGER, FIEGER,*

*KENNEY & HARRINGTON, P.C.*, for her Complaint, Affidavits of Merit, and Demand for Jury against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the statutes and common law of the State of Michigan.

2.      This court has jurisdiction over this cause of action under the provisions of 28 U.S.C. §§ 1331 and 1343 and pendent jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

3.      The unlawful actions alleged in this Complaint took place within the City of Monroe, County of Monroe, State of Michigan, and as such jurisdiction lies in the United States District Court for the Eastern District of Michigan.  Venue is proper under 28 U.S.C. §1391(b).

4.      The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs and attorney fees.

## PARTIES

5.      Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

6.     Plaintiff, KRISTEN FREEL, has been duly appointed as the Personal Representative of the Estate of James E. Freel, and is a resident of Temperance, County of Monroe, State of Michigan.

7.     At all times relevant to this lawsuit, Plaintiff, KRISTEN FREEL, has been duly appointed as the Personal Representative of the Estate of James E. Freel, Deceased, in the Monroe County Probate Court, Case# 2022-0334-DE.

8.     At all times relevant hereto, Defendant, COUNTY OF MONROE, ("MONROE COUNTY") was a municipal corporation, duly organized in carrying on governmental functions in the County of Monroe, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Monroe County Jail.

9.     At all times relevant hereto, Defendant, CO CHARLES GALLOWAY, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

10.    At all times relevant hereto, Defendant, CO JAMES MCGARRY, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope

of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

11.    At all times relevant hereto, Defendant, CO JUSTIN COSTLOW, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

12.    At all times relevant hereto, Defendant, CO NOAH KETTINGER, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

13.    At all times relevant hereto, Defendant, CO JUSTUS SCHAFFER, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and

pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

14.     At all times relevant hereto, Defendant, SGT. JASON WATTERSON, was a Sergeant/deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

15.     At all times relevant hereto, Defendant, CO JASON BLOMGREN, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

16.     At all times relevant hereto, Defendant, CO DAVID GURGANUS, was a deputy officer at the Monroe County Jail, employed by Defendant MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

17.   At all times relevant hereto, Defendant, CO BRIAN ROBAR, was a deputy officer at the Monroe County Jail, employed by Defendant, MONROE COUNTY, who was acting under the color of state law, within the course and scope of his employment with MONROE COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of MONROE COUNTY, and is being sued individually and in official capacities.

18.   The above-identified officers, also named in the caption, are collectively referred to herein as the "MONROE OFFICERS."

19.   Defendant, MONROE COUNTY, is responsible for, and does in fact, hire, train, supervise, and instruct deputies, Monroe County Jail detention officers, and jail staff of all grades in the performance of their duties.

20.   At all times relevant hereto, Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC. ("ACH") is an Illinois company and/or corporation that conducts regular business in Monroe County, Michigan.

21.   Upon information and belief Defendant ACH's Resident Agent is The Corporation Company, 40600 Ann Arbor Road E, Ste. 201, Plymouth, MI 48170.

22.    Upon information and belief, Defendant, DR. DARYL PARKER (hereinafter "DR. PARKER") is a registered medical doctor licensed to practice medicine in the State of Michigan, and conducts regular business in Monroe County, State of Michigan.

23.     Upon information and belief, Defendant, ALYSIA TOLA, LPN (hereinafter "TOLA") is a licensed practical nurse licensed to practice as a practical nurse in the State of Michigan, and conducts regular business in Monroe County, State of Michigan.

24.     Upon information and belief, Defendant, RACHEAL MICHAUD, LPN (hereinafter "MICHAUD") is a licensed practical nurse licensed to practice as a practical nurse in the State of Michigan, and conducts regular business in Monroe County, State of Michigan.

25.     Upon information and belief, Defendant, ALEXISS CONTE, LPN (hereinafter "CONTE") is a licensed practical nurse licensed to practice as a practical nurse in the State of Michigan, and conducts regular business in Monroe County, State of Michigan.

26.     At all times relevant hereto, Defendant, DR. PARKER, was engaged in the practice of medicine in Monroe County, State of Michigan, and held himself out to the public in general, and to JAMES E. FREEL, deceased, in particular, as a skilled and competent Medical Doctor, capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to Decedent, JAMES E. FREEL, in particular.

27.     At all times relevant hereto, Defendant, DR. PARKER, was an actual, apparent, and/or ostensible principal, agent, servant, and/or employee of Defendant

ACH, and at all times relevant hereto, was acting within the course and scope of his agency and/or employment with Defendant, ACH, when the negligence/medical malpractice/gross negligence/deliberate indifference alleged herein was committed, thereby imposing vicarious liability upon the corporate Defendant, ACH.

28. Defendant, ACH, is vicariously liable for the actions and inactions of all of their agents, ostensible agents, and/or employees whether physicians, residents, nursing staff, emergency medical technicians and/or paramedics or other healthcare providers as set forth herein and incorporated by reference herein.

29. At all times relevant hereto, Defendants, TOLA, MICHAUD, and CONTE, were engaged in the practice of nursing in Monroe County, State of Michigan, and held themselves out to the public in general, and to JAMES E. FREEL, deceased, in particular, as a skilled and competent Licensed Practical Nurse(s), capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to JAMES E. FREEL, deceased, in particular.

30. At all times relevant hereto, Defendants, TOLA, MICHAUD, and CONTE, were the actual, apparent, and/or ostensible principals, agents, servants, and/or employees of Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., ("ACH") and at all times relevant hereto, were acting within the course and scope of their agency and/or employment with Defendant, ACH,

when the negligence, medical malpractice, gross negligence, deliberate indifference alleged herein was committed, thereby imposing vicarious liability upon the corporate Defendant, ACH.

31.     Defendant, ACH, is vicariously liable for the actions and inactions of all of its agents, ostensible agents, and/or employees whether physicians, residents, nursing staff, emergency medical technicians and/or paramedics or other healthcare providers as set forth herein and incorporated by reference herein.

32.     Defendant, ACH, is further liable in its own capacity for its own actions and inactions of negligence, gross negligence, deliberate indifference and/or professional malpractice.

33.     At all times relevant to this Complaint, Defendant, ACH, was performing health care services for Monroe County, in particular, the Monroe County Jail.

## **FACTUAL STATEMENT**

34.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

35.     On or about March 15, 2022, James Edward Freel (D/O/B: 01/25/2003), turned himself in to the Monroe County Jail.

36.     Decedent's medical history included bradycardia and hypotensive.

37.     Approximately three weeks later, James began experiencing pain from what he described to his girlfriend as a lump in his stomach.

38.     Upon information and belief, Decedent told his girlfriend that he had requested to see a doctor, which apparently happened on April 5, 2022.

39.     Upon information and belief, Defendant, DR. DARYL PARKER, saw Decedent, on April 5, 2022.

40.     Upon information and belief, decedent medical records do not contain an entry of Decedent's vital signs, and there is no indication of any physical examination.

41.     Upon information and belief, Defendant, DR. DARYL PARKER, did nothing else and allowed decedent to return to the dayroom/cell.

42.     Upon information and belief, over the next few weeks, decedent's pain continued to increase and yet despite his requests to the Defendant, MONROE OFFICERS, Monroe jail staff, and Monroe Jail medical staff, Decedent received no medical treatment until April 18, 2022.

43.     Upon information and belief, on April 18, 2022, Decedent called his girlfriend indicating that the pain was unbearable, and that he had begun vomiting.

44.     Upon information and belief, Decedent had been repeatedly asking Defendant, MONROE OFFICERS, to see medical and his requests were denied or ignored.

45.     Upon information and belief, Decedent's girlfriend called the Monroe County Jail with her obvious concerns and requested decedent to be treated by medical staff.

46.     That on April 18, 2022, decedent was seen by Defendant, ALYSIA TOLA, LPN.

47.     Upon information and belief, Defendant, ALYSIA TOLA, LPN, noted decedent's complaints of abdominal pain, nausea, and that he had not had a bowel movement in a week.

48.      Upon information and belief, Defendant, ALYSIA TOLA, LPN, noted that the decedent's abdomen was "soft, bs present."

49.     Upon information and belief, Defendant, ALYSIA TOLA, LPN, noted decedent's blood pressure of 160/54.

50.     Upon information and belief, Defendant, ALYSIA TOLA, LPN, noted that per Defendant, DR. DARYL PARKER, decedent was to be given Zofran, lactose, and lactulose.

51.     Upon information and belief, Defendant, DR. DARYL PARKER, did not perform an in-person examination.

52.     Upon information and belief, Decedent was indeed laying on the dayroom floor holding his abdomen, in obvious, visible severe and serious pain.

53.     Upon information and belief, there is no indication that Decedent was provided any of these medications, and he was returned/confined to his dayroom/cell.

54.     Upon information and belief, Defendant, ALYSIA TOLA, LPN, walked past decedent shortly after her examination, and that the Decedent was "doubled over" in pain.

55.     Upon information and belief, Defendant, ALYSIA TOLA, LPN, did nothing further.

56.     Upon information and belief, Decedent was experiencing an acute onset of abdominal pain with vomiting.

57.     Upon information and belief, Decedent was going back and forth to the bathroom, vomiting, and laying on the floor complaining in a ball of pain.

58.     Upon information and belief, Decedent's pain was so intense that others in the dayroom/cell(s) began complaining.

59.     That Decedent requested that he needed his own cell with a cot, and he was later moved to an upstairs dayroom/cell with no medical treatment.

60.     Upon information and belief, Decedent spent the remainder of the day lying on the floor, and not eating, and not provided medical treatment.

61.     Upon information and belief, at approximately 7:00 p.m., Decedent had a med pass to be seen by Defendant, ALEXISS CONTE, LPN, but he did not show up for his appointment because of his condition.

62.     Upon information and belief, Defendant, ALEXISS CONTE, LPN, did nothing further.

63.     Upon information and belief, Decedent was not seen again by any medical staff until over 11 hours later by Defendant, RACHEAL MICHAUD, LPN.

64.     Upon information and belief, Defendant, RACHEAL MICHAUD, LPN, was told that Decedent had hit his head, had a seizure, was dizzy, and he could not stand up straight for his assessment.

65.     Upon information and belief, Defendant, RACHEAL MICHAUD, LPN, informed Decedent that his vitals were normal and that she would get him medication for his "stomachache."

66.     Upon information and belief, Decedent's vitals were not normal.  His heart rate was 49 and his blood pressure was 103/79.  His breathing sounds were slow.  There was redness and swelling on the top of his head.

67.     Upon information and belief, Defendant, RACHEAL MICHAUD, LPN, did nothing further.

68.     Despite his baseline, Decedent's complaints, symptoms, and requests were ignored.

69.     At 8:03 p.m., Decedent was discovered unresponsive by jail staff, and rescue efforts were unsuccessful.

70.     Decedent passed away in his cell on April 19, 2022.

71.      An autopsy was performed, and the Medical Examiner opined:

It is my opinion that death was caused by small intestine volvulus. On autopsy, a portion of the small bowel was found twisted around the mesentery. This resulted in occlusion of the vascular supply to the bowel. Without adequate oxygen, a segment of small bowel past the volvulus became irreparably injured. Postmortem toxicology was non-contributory.

72.     That Decedent's passing due to a small intestine volvulus went undiagnosed and untreated, was preventable, but occurred because of the negligence, gross negligence, and deliberate indifference displayed above by Defendant ACH, and its staff/employees/agents.

73.     During Decedent's entire jail stay, Defendants, CO CHARLES GALLOWAY, CO JAMES MCGARRY, CO JUSTIN COSTLOW, CO NOAH KETTINGER, CO JUSTUS SCHAFFER, SGT. JASON WATTERSON, CO JASON BLOMGREN, CO DAVID GURGANUS, and CO BRIAN ROBAR, ("MONROE OFFICERS") observed that Mr. Freel complained of a headaches, head pain, abdomen pain, was vomiting, had dizziness, developed redness and swelling to his head, was lying on the floor, was not eating, were aware of Mr. Freel's elevated blood pressure and heart rate, witnessed Mr. Freel become incoherent, reported that Mr. Freel was unable to sit up on his own, saw that Mr. Freel was thrashing, groaning,

yelling, that Mr. Freel displayed a fever, and further, that ACH and its employees were essentially doing nothing.

74.    Upon information and belief, no action was taken by Defendants, MONROE OFFICERS, despite the obvious medical emergency.

75.    At all times relevant hereto, Defendants, MONROE OFFICERS, failed to timely and/or appropriately perform physical jail cell checks as required.

76.    At all times relevant hereto, the Monroe County Jail was equipped with visual and audio monitoring systems, and Defendants, MONROE OFFICERS, failed to timely and/or appropriately monitor Decedent and/or utilize the video and audio monitoring equipment as required of them.

77.    At all times during the incarceration of decedent, JAMES E. FREEL, at the Monroe County Jail, Decedent, behaved in such a fashion that was highly evident that he was experiencing several medical episodes, was rapidly deteriorating, and needed prompt and immediate medical treatment.

78.    At all times relevant hereto, Defendants, MONROE OFFICERS, knew or should have known of Decedent's delicate state and deteriorating condition.

79.    At all times relevant hereto, Defendants, MONROE OFFICERS, did not initiate close observation of Decedent, and/or take proper precautions to protect him, and/or take steps to properly and adequately monitor him.

80.    At all times relevant hereto, Defendants, MONROE OFFICERS, ignored Decedent and left him in the dayroom/cell without further monitoring for extended periods of time despite Mr. Freel's ongoing and increasing visible medical emergency.

81.    Defendants are not entitled to governmental immunity and/or qualified immunity.

## COUNT I
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
## AGAINST DEFENDANTS "MONROE OFFICERS"

82.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

83.    At all times mentioned herein, Defendants, CO CHARLES GALLOWAY, CO JAMES MCGARRY, CO JUSTIN COSTLOW, CO NOAH KETTINGER, CO JUSTUS SCHAFFER, SGT. JASON WATTERSON, CO JASON BLOMGREN, CO DAVID GURGANUS, and CO BRIAN ROBAR, ("MONROE OFFICERS") were acting under color of law, and the ordinances, regulations, and/or customs of the Monroe County Jail and Defendant, MONROE COUNTY.

84.    At all times relevant hereto, the Defendants, MONROE OFFICERS, and MONROE COUNTY subjected Decedent, JAMES E. FREEL, to a deprivation

of his rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

85.     Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendants, MONROE OFFICERS, and MONROE COUNTY, owed Decedent, JAMES E. FREEL, the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

86.     Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, a detainee like Decedent, JAMES E. FREEL, had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

87.     The conduct of Defendants, MONROE OFFICERS, and MONROE COUNTY, deprived Decedent, JAMES E. FREEL, of his clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

88.     The Defendants, MONROE OFFICERS, and MONROE COUNTY, owed a duty to the general public, and specifically to Decedent, JAMES E. FREEL, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to detainees, as well as to train,

test, evaluate, review, and update its officers' abilities to function in a reasonable

manner and in conformance with the laws of the United States and the State of

Michigan relative to providing detainees with the appropriate and relevant medical

attention to their known and well documented medical needs.

89.     Defendants, MONROE OFFICERS and MONROE COUNTY, violated

Decedent's civil rights when they displayed deliberate indifference toward

Decedent, JAMES E. FREEL's, serious medical condition in the following ways:

a.  Failure to properly train officers and jail personnel in the evaluation of whether a detainee needs medical treatment;

b.  Failure to provide Decedent with timely and/or immediate medical attention for a serious medical need;

c.  Failure to assure that Decedent was examined and/or treated after he exhibited signs of distress and erratic behavior as described previously;

d.  Failure to assure that Decedent was examined and/or treated after he exhibited signs of medical episodes;

e.  Failure to perform physical jail cell checks and/or otherwise abide by policies, if any, to ensure the physical well-being of detainees, specifically Decedent;

f.  Failure to timely and/or appropriately monitor Decedent, utilizing the video and audio monitoring equipment with which the MONROE COUNTY Jail was equipped;

g.  Failure to adequately monitor the well-being of Decedent, with knowledge that Decedent was suffering from a medical condition;

h.  Failed to provide timely and/or immediate medical attention to Decedent;

i.   Allowing Decedent to go with virtually no food intake knowing that he had specific medical conditions;

j.   Allowing Decedent, an inmate with known serious health conditions to be left alone in his cell with no supervision/monitoring, or ignoring of same;

k.   Allowing Decedent with known serious health condition to be left alone in his cell with no supervision/monitoring, or ignoring of same that create a fall risk; and

l.   Any and all other breaches that become known during the course of discovery which are hereby incorporated by reference.

90.   The acts and/or omissions of Defendants, MONROE OFFICERS and MONROE COUNTY, violated the civil rights of Decedent, JAMES E. FREEL, which directly and proximately caused Decedent to suffer numerous injuries including, but not limited to the following:

a.   Conscious physical pain and suffering endured by Decedent prior to his death;

b.   Medical and hospital expenses;

c.   Funeral and burial expenses;

d.   Death;

e.   Loss of financial support from Decedent;

f.   Loss of society and companionship of Decedent;

g.    Attorney fees and costs pursuant to 42 U.S.C. §1988;

h.   Any and all other damages allowed by law; and

   i. All other damages learned through the course of discovery and otherwise recoverable under the law.

91. The acts and/or omissions of Defendants, MONROE OFFICERS, and MONROE COUNTY were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Decedent, JAMES E. FREEL, and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

92. Plaintiff has retained private counsel to represent her in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT II**
**FAILURE TO TRAIN, INADEQUATE POLICIES and/or PROCEDURES, CUSTOMS, AND PRACTICES, AND FAILURE TO SUPERVISE – DELIBERATE INDIFFERENCE**
**DEFENDANT, COUNTY OF MONROE**

93. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

94. Pursuant to 42 USC § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant, COUNTY OF

MONROE, ("MONROE COUNTY"), owed Decedent, JAMES E. FREEL, certain duties to properly supervise, monitor, and train its officers to supervise the jail's detainees so that they would detect serious medical conditions and facilitate prompt and proper medical attention.

95.     Defendant, MONROE COUNTY, breached these duties via its and/or absence thereof its policies, procedures, regulations, customs and/or lack of and/or inadequate training, and thus exhibited a deliberate indifference toward its detainees, and specifically toward Decedent, JAMES E. FREEL, when Defendant MONROE COUNTY:

      a.  Failed to staff the jail with competent officers, and specifically, failed to ensure that Defendants "Monroe Officers," as stated above, would respond competently to events involving inmates at the jail;

      b.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees, including but not limited to those, such as Decedent, who have medical conditions of which they have been previously provided notice;

      c.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of detainees;

      d.  Failed to ensure officers conduct timely and adequate physical jail cell checks on detainees to ensure the physical well-being of each detainee, and specifically Decedent;

      e.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees to ensure the well-being of each detainee, specifically Decedent;

f.  Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of detainees utilizing the audio/visual system with which the jail was equipped;

g.  Failed to provide training and/or adequate training to its officers for the proper use of its audio/visual system with which the jail was equipped to ensure the well-being of each detainee;

h.  Failed to provide training and/or adequate training to its officers to ensure the proper execution of policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees to ensure the well-being of each detainee, specifically Decedent;

i.  Failed to provide training and/or adequate training to its officers to recognize the signs of a medical episode and the need for immediate medical attention;

j.  Failed to supervise its officers to ensure that its policies, regulations, procedures, customs, are being properly executed and that each detainee's, and specifically, Decedent's constitutional rights are being protected;

k.  Failed to supervise its officers to ensure the adequate monitoring and supervision of detainees who have serious medical needs which require medical attention;

l.  Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, relative to recognizing the need for medical care and providing immediate medical attention to detainees;

m. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, regarding the frequency and/or sufficiency of physical jail checks, and/or monitoring and/or supervision of detainees by utilizing the audio/visual equipment with which the Monroe County Jail was equipped; and

n. All other breaches learned through the course of discovery which are hereby adopted by reference.

96. Through its agents and employees, Defendant MONROE COUNTY's treatment of the decedent, including contracting with Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., ("ACH") and knowing it did not have policies and procedures of hiring and investigating their doctors and staff, adequate oversight, supervision, training, procedures, policies, or mechanisms to ensure the safety and health of inmates constitutes an official policy, custom, pattern, or practice that deprived the decedent of his civil rights as guaranteed by the United States Constitution.

97. The deprivation of constitutional rights alleged in this complaint is the direct result of official policy, customs, and practices of Defendant, MONROE COUNTY, as well as Defendant, ACH.

98. The acts and/or omissions of Defendant, MONROE COUNTY, violated the civil rights of Decedent, JAMES E. FREEL, which directly and proximately caused Decedent to suffer numerous injuries and damages including death as stated in detail in the Counts above.

99. The acts and/or omissions of Defendant, MONROE COUNTY, were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Decedent, and Plaintiff therefore requests an

award of punitive and exemplary damages against these Defendants according to proof.

100.   Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT III
## GROSS NEGLIGENCE
## AGAINST DEFENDANTS - "MONROE OFFICERS"
## and MONROE COUNTY

101.   Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

102.   At all relevant times, the individually named "MONROE OFFICERS" were acting within the course and scope of their employment with Defendant, MONROE COUNTY.  These individuals and Defendant, MONROE COUNTY, are collectively referred to herein as the "MONROE COUNTY Defendants."

103.   The MONROE COUNTY Defendants owed Decedent, JAMES E. FREEL, the duty to provide medical care for his obviously serious medical needs.

104. These Defendants, acting within the scope of their employment, breached this duty and were grossly negligent, as defined in MCL 691.1407(2)(c), when they acted so recklessly as to demonstrate a substantial lack of concern as to whether injury would result toward Decedent, and with disregard for his health, safety, and constitutional and/or statutory rights.

105. At all times relevant, the MONROE COUNTY Defendants were grossly negligent when they:

    a. Failure to properly train officers and jail personnel in the evaluation of whether a detainee needs medical treatment;

    b. Failure to provide Decedent with timely and/or immediate medical attention for a serious medical need;

    c. Failure to assure that Decedent was examined and/or treated after he exhibited signs of distress and erratic behavior as described previously;

    h. Failure to assure that Decedent was examined and/or treated after he exhibited signs of medical episodes;

    i. Failure to perform physical jail cell checks and/or otherwise abide by policies, if any, to ensure the physical well-being of detainees, specifically Decedent;

    j. Failure to timely and/or appropriately monitor Decedent utilizing the video and audio monitoring equipment with which the Monroe County Jail was equipped;

    m. Failed to provide timely and/or immediate medical attention to Decedent;

    n. Allowing Decedent to go with virtually no food intake knowing that he had specific medical conditions;

    o. Allowing Decedent, an inmate with known serious health conditions, to be left alone in his cell with no supervision/monitoring, or ignoring of same;

    p. Allowing Decedent, with known serious health conditions, to be left alone in his cell with no supervision/monitoring, or ignoring of same, that create a fall risk; and

    q. Any and all other breaches that become known during the course of discovery which are hereby incorporated by reference.

106. The grossly negligent acts and/or omissions of the MONROE COUNTY Defendants directly and proximately caused Decedent JAMES E. FREEL to suffer numerous injuries and damages including death as stated in detail in Counts above.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT IV
## MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE – LIABILITY OF DEFENDANT ADVANCED CORRECTIONAL HEALTHCARE, INC.

107. Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

108.   Pursuant to MCL 333.20141 and MCL 333.21513, Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., ('ACH") is responsible for all phases of the operation of its medical facility, operations, and/or practice, selection of medical staff, and quality of care rendered in its medical facility, operation, and/or practice.

109.   When presented with a patient like Decedent, JAMES E. FREEL, the standard of practice required Defendant, ACH, to provide care and treatment consistent with that of a reasonable and prudent medical facility, provider, and/or practice.

110. When presented with a patient like Decedent, Defendant, ACH, as well as through its agents and employees, including but not limited to Defendants, PARKER, TOLA, MICHAUD, and CONTE, had a direct duty pursuant to MCL 333.20141 and MCL 333.21513, to do all of the following, which Defendant, ACH, failed to do, and is, therefore, negligent:

   a.   Select, screen, train, and employ only qualified personnel;

   b.   Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;

   c.   Truthfully and accurately document the patient's medical record;

   d.   Retain a full and complete legible copy of the medical record;

   e.   Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

    i.  Coordination of patient care;
    ii.  Care and treatment of the patient;
    iii.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection that required treatment;
    iv.  Maintenance/preservation of a patient's medical chart; and

f.  Refrain from other actions and/or inactions of professional negligence yet provide Decedent, proper medical care based on his known medical history, including but not limited to appropriate observation, referral, and treatment; and

g.  Refrain from other actions and/or inactions of general negligence, gross negligence, and/or professional negligence yet to be determined.

111.  At all times relevant to the care and treatment of Decedent, Defendant, ACH, failed in all respects to comply with the applicable standard of practice or care and was therefore professionally negligent in its care and treatment of Decedent. Plaintiff hereby incorporates the attached/enclosed Affidavits of Merit as if set forth fully herein.

112.  That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendant, ACH, Decedent, JAMES E. FREEL, suffered numerous injuries and damages, including death, as stated in detail in the Counts above.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in

excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT V**
**MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANT DR. DARYL PARKER, and**
**VICARIOUS LIABILITY OF DEFENDANT**
**ADVANCED CORRECTIONAL HEALTHCARE, INC.**

113.   Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

114.   The standard of care applicable to Defendant, DR. DARYL PARKER, and any other physicians involved in the care and treatment of Decedent, JAMES E. FREEL, is that of a reasonable and prudent medical doctor in conformance with the degree of the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

115.   The applicable standard of practice/care required that Defendant, DR. DARYL PARKER, and any other medical doctors involved in the care and treatment of Decedent, is to timely and appropriately do all of the following, which he failed to do, and is therefore professionally negligent:

  a.  Perform a history and physical examination;
  b.  Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;

c.  Properly treat the patient;

d.  Develop a plan of management;

e.  Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

f.  Monitor and recognize/respond to the patient's signs of internal bleeding;

g.  Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;

h.  Monitor and recognize/respond to the patient's signs of constipation;

i.  Monitor and recognize/respond to the patient's elevated temperature;

j.  Monitor and recognize/respond to the patient's poor respiration;

k.  Monitor and recognize/respond to the patient's extremely high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;

l.  Monitor and recognize/respond to the patient's signs of the onset of sepsis;

m.  Monitor and recognize/respond to the patient's pallor;

n.  Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;

o.  Monitor and recognize/respond to the patient's severe abdominal pain;

p.  Monitor and recognize/respond to the patient's nausea and vomiting;

q.  Failure to provide the necessary medication(s) given the presenting condition;

r.  Communicate plan of management to other physicians and nurses involved in patient's care;

s.  Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;

t.  Advocate for treatment;

u.  Failure to send patient for the obvious need for emergency surgery;

v.  Failure to complete timely, accurate, and thorough records;

w.  Order the checking of the patient's vitals;

x.  Manage and supervise nursing staff;

y.  Comply with applicable standards; and

z.  Any other acts or omissions revealed during the course of discovery.

116.   At all times relevant to the care and treatment of Decedent, Defendant, DR. DARYL PARKER, failed to comply with the applicable standard of practice or care and was therefore professionally negligent in his care and treatment of Decedent.  Plaintiff hereby incorporates the attached/enclosed Affidavits of Merit as if set forth fully herein.

117.   That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendant, DR. DARYL PARKER, and any other medical doctors, Decedent suffered numerous injuries and damages, including death, as stated in detail in the Counts above.

118.   Defendant, ACH, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment of Decedent, including, but not limited to Defendant, DR. DARYL PARKER, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT VI
## MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANTS ALYSIA TOLA, LPN, RACHEAL MICHAUD, LPN, ALEXISS CONTE, LPN and VICARIOUS LIABILITY OF DEFENDANT ADVANCED CORRECTIONAL HEALTHCARE, INC.

119.   Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

120.   The standard of care applicable to Defendants, ALYSIA TOLA, LPN, RACHEAL MICHAUD, LPN, and ALEXISS CONTE, LPN, and any other licensed practical nurses involved in the care and treatment of Decedent, JAMES E. FREEL, is that of a reasonable and prudent licensed practical nurse, and/or nurse in conformance with the degree of the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

121.   The applicable standard of practice/care required that Defendants, ALYSIA TOLA, LPN, RACHEAL MICHAUD, LPN, and ALEXISS CONTE, LPN, and any licensed practical nurses and/or nurses, involved in the care and treatment of Decedent, is to timely and appropriately do all of the following, which they failed to do, and are therefore professionally negligent:

  a. Perform a history and physical examination;
  b. Carefully assess the condition of the patient and report findings;
  c. Properly triage/intake the patient;
  d. Properly treat the patient;

e.  Properly assess the patient and report to physicians and supervisors when appropriate;

f.  Perform a history and physical examination;

g.  Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;

h.  Develop a plan of management;

i.  Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

j.  Monitor and recognize/respond to the patient's signs of internal bleeding;

k.  Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;

l.  Monitor and recognize/respond to the patient's signs of constipation;

m.  Monitor and recognize/respond to the patient's elevated temperature;

n.  Monitor and recognize/respond to the patient's poor respiration;

o.  Monitor and recognize/respond to the patient's extremely high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;

p.  Monitor and recognize/respond to the patient's signs of the onset of sepsis;

q.  Monitor and recognize/respond to the patient's pallor;

r.  Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;

s.  Monitor and recognize/respond to the patient's severe abdominal pain;

t.  Monitor and recognize/respond to the patient's nausea and vomiting;

u.  Failure to provide the necessary medication(s) given the presenting condition;

v.  Communicate plan of management to other physicians and nurses involved in patient's care;

w. Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;
x. Advocate for treatment;
y. Failure to send patient for the obvious need for emergency surgery;
z. Failure to complete timely, accurate, and thorough records;
aa. Comply with applicable standards;
bb. Speak up, advocate for, and protect the patient; and
cc. Any other breaches of the standard of care which may be revealed over the course of discovery.

122.   At all times relevant to the care and treatment of Decedent, Defendants, TOLA, MICHAUD, and CONTE, and any other licensed practical nurses and/or nurses, failed in all respects to comply with the applicable standard of practice or care and were therefore professionally negligent in their care and treatment of Decedent.  Plaintiff hereby incorporates the attached/enclosed Affidavits of Merit as if set forth fully herein.

123.   That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendants, TOLA, MICHAUD, and CONTE, and any other licensed practical nurses and/or nurses, Decedent, suffered numerous injuries and damages, including death, as stated in detail in the Counts above.

124.   Defendant, ACH, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment of

Decedent, including, but not limited to Defendants, TOLA, MICHAUD, and CONTE, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT VII**
**GENERAL NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANTS DR. PARKER, TOLA, MICHAUD, CONTE and**
**VICARIOUS LIABILITY OF DEFENDANT ACH**

125.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

126.    At all times relevant hereto, Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and the staff of Defendant, ACH, had a duty to act as a reasonably careful person would act under the same or similar circumstances that existed at the time of the subject incident.

127.    At all times relevant hereto, Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and the staff of Defendant, ACH, owed Decedent, the following duties in particular by the way of illustration and not limitation, and breached the same by:

   a.   Perform a history and physical examination;

b. Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;

c. Properly triage/intake the patient;

d. Properly treat the patient;

e. Develop a plan of management;

f. Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

g. Monitor and recognize/respond to the patient's signs of internal bleeding;

h. Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;

i. Monitor and recognize/respond to the patient's signs of constipation;

j. Monitor and recognize/respond to the patient's elevated temperature;

k. Monitor and recognize/respond to the patient's poor respiration;

l. Monitor and recognize/respond to the patient's extremely high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;

m. Monitor and recognize/respond to the patient's signs of the onset of sepsis;

n. Monitor and recognize/respond to the patient's pallor;

o. Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;

p. Monitor and recognize/respond to the patient's severe abdominal pain;

q. Monitor and recognize/respond to the patient's nausea and vomiting;

r. Failure to provide the necessary medication(s) given the presenting condition;

s. Communicate plan of management to other physicians and nurses involved in patient's care;

t. Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;

u. Advocate for treatment;

v. Failure to send patient for the obvious need for emergency surgery;

w. Failure to complete timely, accurate, and thorough records;

x.  Order the checking of the patient's vitals;

y.  Manage and supervise nursing staff;

z.  Comply with applicable standards;

aa. Failure to complete timely, accurate, and thorough records;

bb. Speak up, advocate for, and protect the patient; and

cc. Refrain from other actions and/or inactions of general negligence, gross negligence, and/or professional negligence yet to be determined.

128.   The above-described acts of negligence and/or gross negligence by Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and/or the staff of Defendant, ACH, as well as the actions and inactions set forth in the attached/enclosed Affidavits of Merit, proximately caused Decedent JAMES E. FREEL, to suffer numerous injuries and damages, including death, as stated in detail in the Counts above.

129.   Defendant, ACH, is liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment to Decedent, including, but not limited to Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and/or the staff of Defendant, ACH, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT VIII**
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**AGAINST DEFENDANTS, DR. PARKER, TOLA, MICHAUD, CONTE,**
**and DEFENDANT ACH**

130.   Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

131.   Decedent was subjected to a deprivation of clearly established, constitutionally protected rights and privileges secured by the Constitution of the United States.

132.   The foregoing rights were clearly established at the time of the violations.

133.   At all times mentioned herein, Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH, were acting under color of law and/or their statutory or legal authority.

134.   At all times relevant hereto, Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH, subjected Decedent to a deprivation of his rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

135.   Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH, owed Decedent, the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

136.    Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, a detainee like Decedent had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

137.    The conduct described herein and in the attached/enclosed Affidavits of Merit of Defendant, ACH, through Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, deprived Decedent of his clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

138.    Defendants, DR. PARKER, TOLA, MICHAUD, CONTE,, and ACH, owed a duty, and specifically to Decedent, to act prudently, and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to detainees, as well as to train, test, evaluate, review, and update staff to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan relative to providing detainees with the appropriate and relevant medical attention to their known and well documented medical needs.

139.    Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, violated Decedent's civil rights when they displayed deliberate indifference toward Decedent's serious medical condition, as described previously in this pleading.

140. These deprivations were caused by the customs, policies, and established practices of Defendant, ACH, acting under color of its statutory and legal authority.

141. Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, committed the constitutional violations herein as a result of the training and/or lack of re-training, lack of supervision, lack of direction, and lack of monitoring by Defendant, ACH.

142. Defendant, ACH, failed to properly train, monitor, direct, discipline and supervise its medical staff, and knew or should have known that its medical staff, specifically Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, would engage in the complained of behavior.

143. In the aforementioned policies, practices, and customs of Defendant, ACH, and its failure to properly and adequately train, monitor, instruct, direct, discipline, and supervise Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH, was reckless and deliberately indifferent to a likelihood that the constitutional rights of the public, and particularly Plaintiff's decedent, would be violated.

144. This improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of Decedent's constitutional rights.

145.   As a direct and proximal result of the unconstitutional acts and omissions of Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH, Decedent, suffered numerous injuries and damages, including death, as stated in detail in the Counts above.

146.   The acts and/or omissions of Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH violated the civil rights of Decedent, which directly and proximately caused Decedent suffered numerous injuries and damages, including death, as stated in detail in the Counts above.

147.   The acts and/or omissions of Defendants, DR. PARKER, TOLA, MICHAUD, CONTE, and ACH were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Decedent, and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

148.   Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, KRISTEN FREEL, as Personal Representative of the Estate of JAMES E. FREEL, Deceased, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

Respectfully submitted,
**_Fieger, Fieger, Kenney & Harrington, P.C._**

By: _/s/ David A. Dworetsky_
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 W. Ten Mile Rd.
Southfield, Michigan 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

Dated: September 9, 2024

<u>**AFFIDAVIT OF MERITORIOUS CLAIM OF**</u>
<u>**JEREMY D. GRAHAM, DO MA FACP**</u>
<u>**PURSUANT TO MCL 600.2912d**</u>

STATE OF WASHINGTON )
                         ) ss
COUNTY OF SPOKANE   )

I hereby certify that I have reviewed the Notice of Intent to File a Claim and all medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice. I am a physician specializing in Internal Medicine and am currently on staff at Mann-Grandstaff VA Medical Center, and I was engaged in the practice Internal Medicine of during the year immediately preceding the date of the occurrence that is the basis for this action. I have devoted a majority of my professional time to the active clinical practice of internal medicine. I further reserve the right to add to or amend this affidavit as additional information becomes available. My opinions are preliminary because I have not reviewed any deposition testimony and may not have reviewed complete medical records. I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

**A.**     <u>**THE APPLICABLE STANDARD OF CARE OR PRACTICE**</u>

    **1.**  <u>**DARYL TYRONE PARKER, M.D.**</u>

        The standard of care or practice applicable to Daryl Tyrone Parker, M.D., is that of a Board Certified Internal Medicine doctor, thus imposing upon Dr. Daryl Tyrone Parker the duty to render care as a reasonable and prudent specialist in internal medicine of average training, experience, and education under the same or similar clinical circumstances as existed at the time of the subject incident as referenced in the Notice. At a minimum, Daryl Tyrone Parker, M.D. had a duty to do the following:

        a) Perform a history and physical examination;
        b) Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;
        c) Properly treat the patient;
        d) Develop a plan of management;
        e) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
        f) Monitor and recognize/respond to the patient's signs of internal bleeding;

g) Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;
h) Monitor and recognize/respond to the patient's signs of constipation;
i) Monitor and recognize/respond to the patient's elevated temperature;
j) Monitor and recognize/respond to the patient's poor respiration;
k) Monitor and recognize/respond to the patient's high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;
l) Monitor and recognize/respond to the patient's signs of the onset of sepsis;
m) Monitor and recognize/respond to the patient's pallor;
n) Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, move, and refusal to eat, move, and respond;
o) Monitor and recognize/respond to the patient's severe abdominal pain;
p) Monitor and recognize/respond to the patient's nausea and vomiting;
q) Failure to provide the necessary medication(s) given the presenting condition;
r) Communicate plan of management to other physicians and nurses involved in patient's care;
s) Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;
t) Advocate for treatment;
u) Failure to send patient for the obvious need for emergency surgery;
v) Failure to complete timely, accurate, and thorough records;
w) Order the checking of the patient's vitals;
x) Manage and supervise nursing staff;
y) Comply with applicable standards; and
z) Any other acts or omissions revealed during the course of discovery.

## 2. **ADVANCED CORRECTIONAL HEALTHCARE, INC.**

The standard of care required that Advanced Correctional Healthcare, Inc., directly and vicariously, when presented with a patient exhibiting signs and symptoms such as those demonstrated by Mr. James Edward Freel, owed a duty to:

i.   Select, screen, train, and employ only qualified personnel;

ii.  Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;

iii. Truthfully, accurately, and timely document the patient's medical record;

iv.  Retain a full and complete legible copy of the medical record;

v.   Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

   a. Coordination of patient care;

   b. Care and treatment of the patient;

     c.   Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of acute onset of abdominal pain, infection, internal bleeding, obstruction, and the need for emergency surgery and/or treatment;

     d.   Maintenance/preservation of a patient's medical chart; and

   vi.  Any other violations of the standard of practice revealed during the course of discovery.

## B.   THE APPLICABLE STANDARD OF CARE WAS BREACHED

### 1.  DARYL TYRONE PARKER, M.D.

Dr. Daryl Tyrone Parker, and Advanced Correctional Healthcare, Inc., directly and vicariously; and any physicians under his supervision, breached the standard of practice and were negligent and/or grossly negligent by failing to do the following:

a) Perform a history and physical examination;
b) Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;
c) Properly treat the patient;
d) Develop a plan of management;
e) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
f) Monitor and recognize/respond to the patient's signs of internal bleeding;
g) Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;
h) Monitor and recognize/respond to the patient's signs of constipation;
i) Monitor and recognize/respond to the patient's elevated temperature;
j) Monitor and recognize/respond to the patient's poor respiration;
k) Monitor and recognize/respond to the patient's high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;
l) Monitor and recognize/respond to the patient's signs of the onset of sepsis;
m) Monitor and recognize/respond to the patient's pallor;
n) Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;
o) Monitor and recognize/respond to the patient's severe abdominal pain;
p) Monitor and recognize/respond to the patient's nausea and vomiting;
q) Failure to provide the necessary medication(s) given the presenting condition;
r) Communicate plan of management to other physicians and nurses involved in patient's care;
s) Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;
t) Advocate for treatment;
u) Failure to send patient for the obvious need for emergency surgery;
v) Failure to complete timely, accurate, and thorough records;
w) Order the checking of the patient's vitals;

x) Manage and supervise nursing staff;

y) Comply with applicable standards; and

z) Any other acts or omissions revealed during the course of discovery.

## 2. **ADVANCED CORRECTIONAL HEALTHCARE, INC.**

Advanced Correctional Healthcare, Inc., directly and vicariously, through its agents, ostensible agents, and/or employees, via emergency medicine specialists, including but not limited to, Dr. Daryl Tyrone Parker, when presented with a patient exhibiting signs and symptoms such as those demonstrated by James Edward Freel, breached the standard of practice and were negligent and/or grossly negligent, and are therefore vicarious liable, by failing to do the following:

i. Select, screen, train, and employ only qualified personnel;

ii. Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;

iii. Truthfully, accurately, and timely document the patient's medical record;

iv. Retain a full and complete legible copy of the medical record;

v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

    a. Coordination of patient care;

    b. Care and treatment of the patient;

    c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of acute onset of abdominal pain, infection, internal bleeding, obstruction, and the need for emergency surgery and/or treatment;

    d. Maintenance/preservation of a patient's medical chart; and

vi. Any other violations of the standard of practice revealed during the course of discovery.

## C. **THE ACTIONS WHICH SHOULD HAVE BEEN TAKEN OR OMITTED BY THE HEALTH CARE PROFESSIONALS AND FACILITIES IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF CARE OR PRACTICE**

### 1. **DARYL TYRONE PARKER, M.D.**

In order to have achieved compliance with the applicable standard of practice or care, Daryl Tyrone Parker, M.D., and Advanced Correctional Healthcare, Inc., directly and vicariously, and any physicians under his supervision, were to be compliant with the standard of practice or care, and should have timely and appropriately performed the following:

a) Perform a history and physical examination;

b) Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;
c) Properly treat the patient;
d) Develop a plan of management;
e) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
f) Monitor and recognize/respond to the patient's signs of internal bleeding;
g) Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;
h) Monitor and recognize/respond to the patient's signs of constipation;
i) Monitor and recognize/respond to the patient's elevated temperature;
j) Monitor and recognize/respond to the patient's poor respiration;
k) Monitor and recognize/respond to the patient's high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;
l) Monitor and recognize/respond to the patient's signs of the onset of sepsis;
m) Monitor and recognize/respond to the patient's pallor;
n) Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;
o) Monitor and recognize/respond to the patient's severe abdominal pain;
p) Monitor and recognize/respond to the patient's nausea and vomiting;
q) Failure to provide the necessary medication(s) given the presenting condition;
r) Communicate plan of management to other physicians and nurses involved in patient's care;
s) Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;
t) Advocate for treatment;
u) Failure to send patient for the obvious need for emergency surgery;
v) Failure to complete timely, accurate, and thorough records;
w) Order the checking of the patient's vitals;
x) Manage and supervise nursing staff;
y) Comply with applicable standards; and
z) Any other acts or omissions revealed during the course of discovery.

2. **ADVANCED CORRECTIONAL HEALTHCARE, INC.**

In order to achieve compliance with the applicable standard of care, Advanced Correctional Healthcare, Inc., directly and vicariously, through its agents, ostensible agents, and/or employees, via internal medicine specialists, including but not limited to Dr. Daryl Tyrone Parker and any physicians under his supervision, to be compliant with the standard of practice or care, should have timely and appropriately performed all of the following:

i.   Select, screen, train, and employ only qualified personnel;

ii.  Effectively and adequately screen physicians during the credentialing process before granting hospital/clinic privileges and/or continuing hospital/clinic privileges;

    iii.    Truthfully, accurately, and timely document the patient's medical record;

    iv.    Retain a full and complete legible copy of the medical record;

    v.    Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a.  Coordination of patient care;

        b.  Care and treatment of the patient;

        c.  Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of acute onset of abdominal pain, infection, internal bleeding, obstruction, and the need for emergency surgery and/or treatment;

        d.  Maintenance/preservation of a patient's medical chart; and

    vi.    Any other violations of the standard of practice revealed during the course of discovery.

**D.**    **THE MANNER IN WHICH THE BREACH OF THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS A PROXIMATE CAUSE OF THE INJURY CLAIMED**

The above-described breaches of the standard of care by Dr. Daryl Tyrone Parker, Advanced Correctional Healthcare, Inc., directly and vicariously, and any physicians under his supervision, were a direct and/or proximate cause of the death of James Edward Freel due to a small intestine volvulus, It is my opinion that more likely than not, to a reasonable degree of medical certainty, but for the joint and several negligence and/or gross negligence of the aforementioned healthcare providers created a foreseeable risk of injury and/or death to James Edward Freel that would have been prevented.

_Jeremy D. Graham_ DO MA FACP

JEREMY D. GRAHAM, DO MA FACP

Subscribed and sworn to before me
this 21st day of August, 2024

_Emma Strobel_

Notary Public
County of Spokane
State of Washington
My Commission Expires: April 26th 2026

Notary Public
State of Washington
EMMA STROBEL
COMM. NO. 22030224
MY COMMISSION EXPIRES
APRIL 26, 2026

## AFFIDAVIT OF MERITORIOUS CLAIM OF TRACEY J. CHRISTY, RN, BSN PURSUANT TO MCL 600.2912d

STATE OF MICHIGAN      )
                           ) ss
COUNTY OF OTTOAWA )

I hereby certify that I have reviewed the Notice of Intent to File Claim and the medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice. I am a licensed registered nurse, and during the year immediately preceding the date of the occurrence that is the basis for this action, I devoted a majority of my professional time to the active clinical practice of nursing. I further reserve the right to add or amend this Affidavit as additional information becomes available. My opinions are preliminary because I have not reviewed all deposition testimony and may not have reviewed all complete medical records. I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

## A. THE APPLICABLE STANDARD OF CARE OR PRACTICE

### 1. ADVANCED CORRECTIONAL HEALTHCARE, INC. NURSING STAFF, INCLUDING BUT NOT LIMITED TO ALYSIA TOLA, LPN, RACHEAL MICHAUD, LPN, AND ALEXISS CONTE, LPN

The standard of care or practice applicable to the employees/agents of Advanced Correctional Healthcare, Inc. which is therefore liable, vicariously, is that of a reasonable and prudent nurse and/or licensed practical nurse, the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities. At a minimum, the Advanced Correctional Healthcare, Inc. nurses, and/or LPNs, including but not limited to: Alysia Tola, LPN, Racheal Michaud, LPN, and Alexiss Conte, LPN, when presented with a patient exhibiting signs and symptoms such as those demonstrated by James Edward Freel, owed a duty to:

a) Carefully assess the condition of the patient and report findings;

b) Properly triage/intake the patient;

c) Properly treat the patient;

d) Properly assess the patient and report to physicians and supervisors when appropriate;

e) Perform a history and physical examination;

f) Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;

g) Develop a plan of management;

h) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;

i) Monitor and recognize/respond to the patient's signs of internal bleeding;

j) Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;

k) Monitor and recognize/respond to the patient's signs of constipation;

l) Monitor and recognize/respond to the patient's elevated temperature;

m) Monitor and recognize/respond to the patient's poor respiration;

n) Monitor and recognize/respond to the patient's extremely high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;

o) Monitor and recognize/respond to the patient's signs of the onset of sepsis;

p) Monitor and recognize/respond to the patient's pallor;

q) Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;

r) Monitor and recognize/respond to the patient's severe abdominal pain;

s) Monitor and recognize/respond to the patient's nausea and vomiting;

t) Failure to provide the necessary medication(s) given the presenting condition;

u) Communicate plan of management to other physicians and nurses involved in patient's care;

v) Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;

w) Advocate for treatment;

x) Failure to send patient for the obvious need for emergency surgery;

y) Failure to complete timely, accurate, and thorough records;

z) Comply with applicable standards;

aa) Speak up, advocate for, and protect the patient; and

bb) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. <u>ADVANCED CORRECTIONAL HEALTHCARE, INC.</u>

Advanced Correctional Healthcare, Inc. remains vicariously liable for any act or omission of any of its agents, actual or ostensible, or employees at the Monroe County Jail, including but not limited to: Alysia Tola, LPN, Racheal Michaud, LPN, and Alexiss Conte, LPN, and any other unidentified nurses, RNs, LPNs, including those under their supervision. For Advanced Correctional Healthcare, Inc., the standard of practice or care is that of a reasonable and prudent health facility. When presented with a patient like James Edward Freel, the standard of practice or care required Advanced Correctional Healthcare, Inc., directly, and acting through its agents, employees, RNs, and LPNs is to timely and appropriately do all of the following:

i. Select, screen, train, and employ only qualified personnel;

ii. Effectively and adequately screen Registered Nurses and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

iii. Truthfully, accurately, and timely document the patient's medical record;

iv. Retain a full and complete legible copy of the medical record;

v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

    a. Coordination of patient care;

    b. Care and treatment of the patient;

    c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

    d. Maintenance/preservation of a patient's medical chart; and

vi.   Any other violations of the standard of practice revealed during the course of discovery.

**B.   THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED**

**1.   ADVANCED CORRECTIONAL HEALTHCARE, INC. NURSING STAFF, INCLUDING BUT NOT LIMITED TO ALYSIA TOLA, LPN, RACHEAL MICHAUD, LPN, AND ALEXISS CONTE, LPN**

The Advanced Correctional Healthcare, Inc. nursing staff, consisting of employees,

agents, or representatives, including but not limited to Alysia Tola, LPN, Racheal Michaud,

LPN, and Alexiss Conte, LPN, breached the standard of practice, were negligent, and

grossly negligent by failing to do the following:

a)   Perform a history and physical examination;
b)   Carefully assess the condition of the patient and report findings;
c)   Properly triage/intake the patient;
d)   Properly treat the patient;
e)   Properly assess the patient and report to physicians and supervisors when appropriate;
f)   Perform a history and physical examination;
g)   Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;
h)   Develop a plan of management;
i)   Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
j)   Monitor and recognize/respond to the patient's signs of internal bleeding;
k)   Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;
l)   Monitor and recognize/respond to the patient's signs of constipation;
m)   Monitor and recognize/respond to the patient's elevated temperature;
n)   Monitor and recognize/respond to the patient's poor respiration;
o)   Monitor and recognize/respond to the patient's extremely high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;
p)   Monitor and recognize/respond to the patient's signs of the onset of sepsis;
q)   Monitor and recognize/respond to the patient's pallor;
r)   Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;

s) Monitor and recognize/respond to the patient's severe abdominal pain;

t) Monitor and recognize/respond to the patient's nausea and vomiting;

u) Failure to provide the necessary medication(s) given the presenting condition;

v) Communicate plan of management to other physicians and nurses involved in patient's care;

w) Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;

x) Advocate for treatment;

y) Failure to send patient for the obvious need for emergency surgery;

z) Failure to complete timely, accurate, and thorough records;

aa) Comply with applicable standards;

bb) Speak up, advocate for, and protect the patient; and

cc) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2. **ADVANCED CORRECTIONAL HEALTHCARE, INC.**

Advanced Correctional Healthcare, Inc., directly and through its agents, breached

the applicable standard of practice or care by failing to timely and appropriately do all of

the following:

    i. Select, screen, train, and employ only qualified personnel;

    ii. Effectively and adequately screen Registered Nurses and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

    iii. Truthfully, accurately, and timely document the patient's medical record;

    iv. Retain a full and complete legible copy of the medical record;

    v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

        a. Coordination of patient care;

        b. Care and treatment of the patient;

        c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

        d. Maintenance/preservation of a patient's medical chart; and

    vi. Any other violations of the standard of practice revealed during the course of discovery.

**C. THE ACTIONS WHICH SHOULD HAVE BEEN TAKEN OR OMITTED BY THE HEALTHCARE PROFESSIONALS AND FACILITIES IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF CARE OR PRACTICE**

**1. ADVANCED CORRECTIONAL HEALTHCARE, INC. NURSING STAFF, INCLUDING BUT NOT LIMITED TO ALYSIA TOLA, LPN, RACHEAL MICHAUD, LPN, AND ALEXISS CONTE, LPN**

The Advanced Correctional Healthcare, Inc. nursing staff, consisting of employees, agents, or representatives, including but not limited to: Alysia Tola, LPN, Racheal Michaud, LPN, and Alexiss Conte, LPN, to be compliant with the standard of practice or care, should have timely and appropriately performed all of the following:

a) Perform a history and physical examination;
b) Carefully assess the condition of the patient and report findings;
c) Properly triage/intake the patient;
d) Properly treat the patient;
e) Properly assess the patient and report to physicians and supervisors when appropriate;
f) Perform a history and physical examination;
g) Perform a complete evaluation, which required a prompt, thorough, and competent in-person examination, including but not limited to obtaining necessary vitals, physical examination, and/or rectal examination, of the patient;
h) Develop a plan of management;
i) Monitor the patient's condition and recognize/respond to signs and symptoms of presentation;
j) Monitor and recognize/respond to the patient's signs of internal bleeding;
k) Monitor and recognize/respond to the patient's signs of acute onset of abdominal pain and vomiting, and signs of bowel obstruction;
l) Monitor and recognize/respond to the patient's signs of constipation;
m) Monitor and recognize/respond to the patient's elevated temperature;
n) Monitor and recognize/respond to the patient's poor respiration;
o) Monitor and recognize/respond to the patient's extremely high systolic blood pressure, very low diastolic blood pressure, heart rate, respiration and/or pulse;
p) Monitor and recognize/respond to the patient's signs of the onset of sepsis;
q) Monitor and recognize/respond to the patient's pallor;
r) Monitor and recognize/respond to the patient's dizziness, seizure(s), weakness, having fallen, and refusal to eat, move, and respond;
s) Monitor and recognize/respond to the patient's severe abdominal pain;
t) Monitor and recognize/respond to the patient's nausea and vomiting;

u) Failure to provide the necessary medication(s) given the presenting condition;

v) Communicate plan of management to other physicians and nurses involved in patient's care;

w) Order/obtain/send for appropriate diagnostic and/or laboratory testing and treatment;

x) Advocate for treatment;

y) Failure to send patient for the obvious need for emergency surgery;

z) Failure to complete timely, accurate, and thorough records;

aa) Comply with applicable standards;

bb) Speak up, advocate for, and protect the patient; and

cc) Any other breaches of the standard of care which may be revealed over the course of discovery.

## 2, <u>ADVANCED CORRECTIONAL HEALTHCARE, INC.</u>

Advanced Correctional Healthcare, Inc. directly and through its agents, to be compliant with the standard of practice or care, should have timely and appropriately performed all of the following:

i. Select, screen, train, and employ only qualified personnel;

ii. Effectively and adequately screen Registered Nurses and Licensed Practical Nurses during the hiring process before allowing them to provide patient care;

iii. Truthfully, accurately, and timely document the patient's medical record;

iv. Retain a full and complete legible copy of the medical record;

v. Enact and enforce policies and procedures intended to maximize patient safety including but not limited to:

    a. Coordination of patient care;

    b. Care and treatment of the patient;

    c. Recognizing and responding to the signs and symptoms of the patient, including signs and symptoms of infection and/or an altered mental status that required treatment;

    d. Maintenance/preservation of a patient's medical chart; and

vi. Any other violations of the standard of practice revealed during the course of discovery.

*Affidavit of Merit – James Edward Freel, deceased*

**D.     THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY**

The above-descried breaches of the standard of care by Alysia Tola, LPN, Racheal Michaud, LPN, and Alexiss Conte, LPN, and perhaps others from Advanced Correctional Healthcare, Inc., were a direct and/or proximate cause of the death of James Edward Freel due to a small intestine volvulus.  It is my opinion that more likely than not, to a reasonable degree of medical certainty, but for the joint and several negligence and/or gross negligence of the aforementioned healthcare providers created a foreseeable risk of injury and/or death to James Edward Freel that would have been prevented.

Further affiant sayeth not.

TRACEY J. CHRISTY, RN, BSN

Subscribed and sworn to before me
this 15th day of August , 2024

Notary Public County of   Kent
State of   Michigan
My Commission Expires: Aug 19 2030

ELLIOTT OLTEAN
Notary Public - State of Michigan
County of Kent
My Commission Expires Aug 19, 2030
Acting in the County of Ottawa